UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TAMELA S. LETT,

             Plaintiff,

v.

                                            Case No. 1:18-cv-862

DEAN TRANSPORTATION, INC.,

                                            Honorable Hala Y. Jarbou

             Defendant.

_____/

## OPINION

This is an action asserting discrimination under Title VII, the ADA, and Michigan state law.  Plaintiff Tamela Lett is a former employee of Defendant Dean Transportation, Inc., in Grand Rapids, Michigan.  Before the Court is Dean's motion for summary judgment on the federal claims in the complaint (ECF No. 49).  For the reasons herein, the Court will grant the motion, resolving the federal claims.  The Court will dismiss the remaining claim because the Court declines to exercise supplemental jurisdiction over it.

### I. Background

The following facts are taken from the evidence, viewing it in a light most favorable to Lett.  Dean provides transportation services for school children.  Lett worked for Dean as a bus attendant from September 2016 until Dean terminated her in June 2018.  As a bus attendant, she would ride on a bus route with a Dean bus driver in order to watch over a particular student or students.

*Lett develops a relationship with Henry Sanchez (early 2017).*

In early 2017, Lett met Henry Sanchez, a Dean bus driver and union steward.  They developed a friendly relationship and socialized with one another during and after work.  They ate

lunch together.  (Lett Dep., ECF Nos. 50-9, 52-2, PageID.777, 780.)[1]  They went shopping together.  (*Id.*, PageID.784.)  He drove her to a union meeting.  (*Id.*, PageID.783.)  He accompanied her to a meeting at her daughter's school.  (*Id.*, PageID.782.)  On several occasions, she told him that she loved him.  (*Id.*, PageID.776.)

*Sanchez's and Lett's relationship deteriorates (April – June 2017).*

After a few months, their relationship turned sour.  Lett contends that Sanchez began making unwanted advances and physical contact in April, May, or June 2017.  (Lett Dep., PageID.796.)  When they would go out for breakfast or lunch, he would grab her hand.  (*Id.*, PageID.788.)  He also began touching her butt.  (*Id.*, PageID.795.)  This happened numerous times, once at a restaurant and other times at the facility where they worked.  (*Id.*, PageID.798.)  On two other occasions, he grabbed her crotch from behind, once when she was about to get on her bus and once when they were at lunch together.  (*Id.*, PageID.806-807.)  Lett did not tell her co-workers about Sanchez's actions because she was too embarrassed to do so.  (*Id.*, PageID.799.)

On June 15, 2017, after an attendant meeting at the facility, Lett was walking across the parking lot toward her car.  Sanchez approached her and put his hand around her waist.  (*Id.*, PageID.809.)  He asked her if she wanted to go to lunch with him.  She made up an excuse not to go.  He then followed her to her car.  She got in her car and sat down with the door open.  (*Id.*, PageID.812.)  He stood in the doorway, leaned toward her and then pulled her head forward to try and kiss her.  (*Id.*, PageID.813.)  She resisted and told him to stop, so he stopped.  She tried to avoid him after that.  On June 29, however, he approached her in the parking lot and told her that he was in love with her.  (*Id.*, PageID.815.)

---

[1] The parties have filed excerpts of Lett's and other depositions in two places on the docket.  The Court will cite pages from these excerpts according to their PageID number.

For much of that summer, Lett worked on a bus with driver Kelly Humphrey.  In August, however, Humphrey bid for a different bus schedule.  On August 15, Humphrey accompanied Lett to find out who Lett's driver would be the following day.  (*Id.*, PageID.817.)  Humphrey discovered that Dean had assigned Sanchez to be Lett's driver.  Lett had told Humphrey about Sanchez's behavior, so Humphrey told the dispatcher that Lett could not ride with Sanchez.  (*Id.*, PageID.817-818.)  At that point, Lett finally decided to tell her supervisor, Transportation Director Bruce Grant, about Sanchez's conduct.

*Lett reports Sanchez's conduct to her supervisor (August 15, 2017).*

Lett went to Grant's office, where she found Grant with Donna Mitchner, another Dean bus attendant.  Lett told them that she could not ride with Sanchez because he had "grabbed [her] butt numerous times."  (*Id.*, PageID.819.)  Grant was concerned, so he told Lett to put her account in writing.  (*Id.*, PageID.820-821.)  She did not do so that day, however.

*Sanchez gives Lett a birthday card (August 17, 2017).*

Two days later, Lett encountered Sanchez as she was pulling into the parking lot at work. He drove his car up next to hers and handed her a white envelope, telling her that it was a birthday card (her birthday was the following day).  (*Id.*, PageID.823.)  She refused to take it, but he insisted. She accepted it so that he would leave her alone.  Lett was upset by this encounter, so she went to Grant's office to complain about it.  He was not in his office at the time, but Lett spoke with the former Transportation Director, Don Sinke, and told him that Sanchez was "sexually harassing" her.  (Sinke Dep., ECF No. 52-5, PageID.887.)  Sinke promised to tell Grant about it.  (Lett Dep., PageID.826.)  Lett could see that Sanchez was still in the area, and she told Sinke that she was scared.  Sinke had another employee escort Lett to her assigned bus, which Humphrey was driving. (*Id.*, PageID.826-827.)

3

*Dean suspends Sanchez (August 17, 2017).*

After Lett left, Sinke called Sanchez into his office and spoke with him about Lett's verbal allegations.  Sinke also suspended Sanchez immediately, pending an investigation.  (Sinke Dep., PageID.887.)  Sanchez gave Sinke a written statement that Sanchez had already prepared, detailing his encounters with Lett.  (*See* Sanchez Statement, ECF No. 51-4.)

*Lett reports the birthday card incident (August 17, 2017).*

When Lett returned to the facility following her afternoon bus run, she told Grant about the incident with Sanchez involving the birthday card.  (Lett Dep., PageID.827.)  Once again, Grant told Lett to put her allegations in writing.  Sanchez was lingering in the area, so Grant escorted Lett to her car.  (*Id.*)

*Lett submits a written report of physical harassment (August 18, 2017).*

Later that evening, Lett prepared a written report, which she gave to Grant on August 18. In her report, Lett stated that Sanchez had "grabbed & slapped [her] butt numerous times." (8/17/2017 Lett Incident Report, ECF No. 51-2.)  And she stated that, after an attendant meeting in June, he put his hand around her waist when walking her to her car.  After she got into her car, he pulled her head forward and tried to kiss her.  (*Id.*)  She told him that he had taken their friendship too far.  She reported being uncomfortable with his behavior and fearful of him.  (*Id.*)

Mitchner submitted a report supporting some of Lett's allegations.  Mitchner stated that she had seen Sanchez "touch [Lett's] back part."  (Mitchner Incident Report, ECF No. 51-3.)  And Lett told Mitchner that she had asked Sanchez to stop his advances because she was not interested. (*Id.*)

For his part, Sanchez admitted that he touched Lett's buttocks on one occasion, when they were at a restaurant together, but he claimed that she "laugh[ed] it off." (Disposition of Incident, ECF No. 51-6.) He also described many friendly interactions between them.

*Dean orders Sanchez not to have contact with Lett (August 25, 2017).*

Grant, Sinke, Mitchner, and others met with Sanchez on August 25, 2017, to discuss Lett's allegations. They spoke with Sanchez and reviewed his statement. They did not interview Lett, and Sinke does not recall whether Lett's statement was available at that meeting. The supervisors concluded that her allegations were "not proven to be a clear case of sexual harassment." (Grant Incident Report, ECF No. 51-9.) According to Sinke's notes from the meeting, Lett's story seemed "far-fetched" because she went to out to eat with Sanchez in June, after he began touching her.[2] (Sinke Dep., PageID.888.) Also, Grant considered the fact that Lett waited over a month after Sanchez's conduct before reporting it to her supervisors. (Grant Dep., ECF Nos. 50-10, 52-8, PageID.587.) The group instructed Sanchez not to have further contact with Lett as a condition for maintaining his employment.

After the meeting with Sanchez, Grant told Lett that Sanchez would be suspended for two days with pay and that he was not to have any contact with her. (Lett Dep., PageID.837-838.) Grant gave Lett the opportunity to transfer to another location, but she declined.

*Sanchez contacts Lett (October 2017 - February 2018).*

Despite the no-contact condition placed on Sanchez, he approached Lett and spoke to her at various times. In October, when she was in the office, he sat down next to her and asked her to come to a union meeting. (*Id.*, PageID.839.) Another time, he said that he liked her shirt. Also,

---

[2] Lett admits that she went to lunch with Sanchez, alone, even after he started touching her butt, but she contends that she did so because he "kept pressuring" her. (Lett Dep., PageID.800-801.)

at a work Christmas party that year, as he was serving soda to some co-workers sitting at Lett's table, he asked Lett if she wanted some.  (*Id.*, PageID.841-842.)  The following January, as Lett was coming out of the bathroom, Sanchez approached her and offered her a paper towel.  (*Id.*, PageID.843.)  And another time, he stood by the door of the facility and watched her out of the corner of his eye as she walked from the bus lot toward the building.  (*Id.*, PageID.848-849.)  Sanchez continued to have similar forms of contact with Lett until February 2018.  Lett believes that all these contacts were a form of harassment, and she reported them to Grant on several occasions.[3]  (*Id.*, PageID.850-851.)  Apparently, neither Grant nor anyone else at Dean took further action to enforce the no-contact condition.

*Lett has conflicts with other co-workers.*

In September 2017, Lett told Grant that a Dean bus driver, Jasmin Cooley, was possibly having an affair with another Dean employee.  Cooley did not appreciate these accusations, so she complained to Grant that Lett was spreading rumors about her.  (Grant Dep., ECF No. 52-8, PageID.901.)  Grant counseled Lett not to spread rumors about employees.  Lett subsequently reported that Cooley had threatened to "fuck [Lett] up" if she "[said] anything" about Cooley. (9/14/2017 Incident Report, ECF No. 52-11.)

In December 2017, Lett reported that another bus driver, Tim Richardson, had "bull[ied]," "haras[sed]," and "intimidate[ed]" her.  (12/19/2017 Incident Report, ECF No. 51-11.)  She got into an argument with him and he accused her of lying on her time sheet.  (Lett Dep., PageID.531, 853.)  Then he started yelling at her and slammed the bus doors in her face.  (*Id.*, PageID.855.)  Richardson explained to Grant that he was frustrated with Lett because she would talk for long

---

[3] Lett states in her brief that she also reported Sanchez's actions to Esther Sanford, Director of Operations, in October 2017, and that Sanford brushed her concerns aside (*see* Pl.'s Resp. 9, ECF No. 52), but the sources cited by Lett do not support these assertions.

periods of time without letting Richardson get a word in.  (Grant Dep., PageID.592.)  Richardson also stated that Lett was "constantly arguing with him," "constantly on her cell phone" while on the bus, and "constantly discussing religion" even after he told her to stop.  (*Id.*, PageID.591-592.) Dean required Richardson to attend counseling for anger issues.  (Lett Dep., PageID.861.)

> *Lett files complaints with the NLRB and the EEOC (January 2018).*

On January 10, 2018, Lett filed a complaint with the National Labor Relations Board, alleging that the union had failed to properly represent her and that Dean had "interfered with her right to engage in union activity and retaliated against her."  (Am. Compl. ¶ 69.)  That same day, Lett filed a discrimination charge against Dean with the Equal Employment Opportunity Commission, alleging sexual discrimination and harassment.  (*Id.* ¶ 70.)

> *Grant meets with Lett and requires her to attend counseling.*

On January 23, 2018, Grant met with Lett regarding the incident involving Richardson. Lett told him that she had used her phone on the bus because she was having "emergencies" with her daughter.  (Grant Dep., PageID.594.)  Grant told Lett that she is "not to be using her cell phone when on the bus" and that she is "not to bring up religious conversation with other people and if they request her to stop, she is to comply."  (*See* 1/23/2018 Incident Report, ECF No. 51-15.) Grant also required Lett to attend counseling.  (*Id.*)  He believed that it might help her attend to family issues that were spilling over into her work.  (Grant Dep., PageID.596-597.)

> *Lett refuses to attend counseling.*

A few days later, Lett sent an email to Sanford and the Human Resources Director, Jane Butler, expressing concerns with the way Grant had handled the incident involving Richardson. Lett claimed that Grant had fabricated his incident report, stating facts that were not true.  (Lett-Sanford Emails, ECF No. 51-16.)  Among other things, Lett complained that the incident report

described the incident as occurring on December 19, 2017, at 10:00 a.m., but Lett was not at work that morning.  She also complained that the report provided no reasons for the counseling requirement and violated her privacy by making such a requirement.

Sanford responded that she was aware of time-and-date error, but that the "overall investigation brought to light areas where your behavior had potential to be a contributing piece leading up to the event that took place [at the] December 19, 2017, 12:45 PM incident."  (*Id.*, PageID.684.)  According to Sanford, Dean required the counseling, at no cost to Lett, to allow Lett to "talk through personal challenges as an employee of Dean[.]"  (*Id.*)  Dean did not require or expect Lett to divulge any personal details.  (*Id.*)

Lett also expressed concerns about Encompass, Dean's company-paid counseling provider. Lett believed that attending counseling would conflict with her religious beliefs because Encompass maintained an office in the same building as a Masonic Temple.  (*See* Grant Dep., PageID.597; Lett Email, ECF No. 51-17.)  However, Grant told Lett that Encompass had more than one location, and that Lett could choose a different site or a different provider.  (*Id.*, PageID.597-598.)  Nevertheless, Lett did not comply with the counseling requirement.

*Lett refuses to ride her assigned bus.*

On February 14, 2018, Lett stepped onto her assigned bus and discovered that Donna Mitchner was there.  (Lett Dep., PageID.862.)  Lett refused to ride with Mitchner because Mitchner did not speak up on Lett's behalf when Dean was investigating Sanchez's conduct.  (*Id.*, PageID.863.)  Lett promptly got off the bus, which then drove off.  Lett walked into the office to ask the dispatcher, Deb Cook, and other Dean employees why Mitchner was riding on her bus. Lett decided to record these conversations without asking for permission to do so, making those employees uncomfortable.  (*Id.*, PageID.866.)

8

*Dean puts Lett on paid leave and reviews her refusal to ride with Mitchner.*

On February 15, 2018, Grant put Lett on paid administrative leave pending an investigation into her refusal to ride the bus.  In response, Lett sent an email to Grant, Sanford and others complaining that Dean had repeatedly harassed and retaliated against her.  In particular, she complained about having to ride with Mitchner and about Grant's "false" incident report.  (Lett-Grant Emails, ECF No. 52-14.)  Grant told her that Dean would review her actions at a meeting on February 21.  (*Id.*)  Meanwhile, Dean interviewed and obtained statements from other employees about Lett's actions on February 14.  At least one employee stated that Lett's actions made her uncomfortable.  (*See* Incident Reports, ECF Nos. 51-21, 51-25.)

*Lett refuses to cooperate with the review.*

On February 21, 2018, Lett met with Regional Operations Manager Brandon Knepp and Mark Murray to discuss employee complaints about her behavior on February 14, 2018. (2/26/2018 Incident Report, ECF No. 51-25.)  She insisted on recording the meeting, but Murray and Knepp would not consent to that.  Murray and Knepp asked Lett to respond to the complaints about her conduct in writing, but she refused to do so and left the meeting.

Lett prepared a statement and gave it to Murray two days later.  (*Id.*, PageID.719.)  Murray reviewed her statement and concluded that Lett had recorded conversations with other employees without their knowledge or consent, which made them uncomfortable.  She also refused to do her assigned work.  (*Id.*, PageID.720.)

Knepp and Grant met with Lett again on March 8, 2018, to resolve her leave status.  (*See* Undated Incident Report, ECF No. 51-26.)  Lett attempted to secretly record the meeting, but Knepp noticed and refused to allow it, so the meeting ended.  (*Id.*)

*Dean puts Lett on unpaid leave and requires Lett to attend counseling.*

After another meeting with Lett on May 24, 2018, Lett accused Dean of harassing her by requiring her to attend meetings to review her conduct.  (Knepp Dep., ECF No. 50-13, PageID.624.)  When Knepp tried to discuss the incident on February 14, "all she wanted to do was bring up Tim Richardson and Henry Sanchez."  (*Id.*, PageID.622.)  She also complained that the counseling requirement violated her religious beliefs because Encompass was located at a Masonic Temple.  However, Knepp explained to her that Encompass is not affiliated with the Masonic Temple and has other locations in Grand Rapids.  (*Id.*, PageID.624.)  Knepp also told her that she needed counseling, in part, because she was having trouble "letting past instances go that have been dealt with by management."  (*Id.*, PageID.622.)

Knepp concluded that Lett had "intimidate[ed] fellow employees" and was "insubordinate to management and the work they have asked her to perform as assigned."  (5/2/2018 Incident Report, ECF No. 51-27.)  Knepp continued Lett's paid administrative leave up to that date.  He put her on unpaid leave for five days, ending on May 31, 2018.  He also required her to "seek counseling for no less than three (3) visits" and to provide documentation of such by June 1, 2018.  (*Id.*, PageID.725.)  Lett had the option of using Encompass or finding her own counseling services at Dean's expense.  (*Id.*; *see* Knepp Dep., PageID.630.)

*Lett again refuses to seek counseling.*

On May 30, 2018, Lett wrote to Knepp, Grant and others, complaining that the counseling requirement invaded her privacy, and that she could not attend counseling with Encompass because its office was located at a Masonic Temple, which violated her religious beliefs.  (5/30/2018 Knepp-Lett Emails, ECF No. 51-28, PageID.731.)

On June 1, 2018, Knepp again explained that Encompass "is not affiliated with the Masonic Temple" and has "three offices in Grand Rapids [one of which] happens to be located in a building that is also utilized by the Masonic Temple." (*Id.*, PageID.730.)  Knepp also clarified that the counseling requirement was for:

1) Your inability to work with peers on a professional basis once you have had differences with them.

2) Your inability to let past incidents, that have been addressed by management, stay in the past and move forward.

3) Your inability to recognize how your own behavior puts peers on the defensive.

(*Id.*)  Because Lett had failed to provide documentation of counseling, Knepp put her on unpaid administrative leave until June 8, 2018, "or until the documentation requested is provided to Bruce Grant." (*Id.*)

*Lett refuses to comply; Dean terminates Lett.*

Lett did not comply with the counseling requirement, so Dean terminated her effective June 8, 2018.  (6/8/2018 Knepp Email, ECF No. 51-30.)

## II. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Courts consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."  *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013).  The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

For claims of discrimination (or retaliation) under Title VII, "'a plaintiff must adduce either direct or circumstantial evidence to prevail'" at the summary judgment stage.  *Rogers v. Henry*

*Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018) (quoting *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009)). Where, as here, "the plaintiff offers only circumstantial evidence of . . . discrimination, the *McDonnell Douglas* burden-shifting framework applies." *Id.*

> Under this framework, the plaintiff must first make out a prima facie case of racial discrimination or retaliation. Then, the burden shifts to the employer to proffer a legitimate, nondiscriminatory [or nonretaliatory] reason for its decision. If the employer does so, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual.

*Id.* at 772 (citations and quotation marks omitted). Pretext is commonly shown with evidence that the proffered reason "1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action." *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003). "Throughout the entire *McDonnell Douglas* framework, the plaintiff bears the burden of persuasion." *Id.*

### III. Analysis

### A. Title VII – Hostile Work Environment & Retaliation

Lett contends that Dean is liable under Title VII for two reasons: (1) Sanchez, one of Dean's employees, sexually harassed her, creating a hostile working environment; and (2) Dean retaliated against her for reporting the harassment.

#### 1. Hostile Work Environment

To establish a prima facie case of a hostile work environment, Lett must show the following:

> (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her race, color, or sex; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and (5) the employer knew or should have known about the harassment and failed to act.

*Stewart v. Esper*, 815 F. App'x 8, 20 (6th Cir. 2020). The harassment "must be objectively hostile or abusive and the victim must also subjectively perceive the environment to be abusive." *Id.*

12

"The alleged incidents of unwelcome harassment are to be considered together to determine whether, under the totality of circumstances, they constitute a hostile work environment." *Id.* The Court looks "'to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).

Lett has failed to establish the fifth element of a prima facie case.  That element requires Lett to show that Dean's response "'manifest[ed] indifference or unreasonableness in light of the facts [Dean] knew or should have known.'"  *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 814 (6th Cir. 2013) (quoting *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 338 (6th Cir. 2008)); *accord Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 348 (6th Cir. 2005) ("In the case of a harassing co-worker, '[a]n employer is liable if it knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.'" (quoting *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999))).

"'A response is adequate if it is reasonably calculated to end the harassment.'"  *Chaney v. Haworth, Inc.*, 802 F. App'x 1006, 1010 (6th Cir. 2020) (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999)).  "Steps that would 'establish a base level of reasonably appropriate corrective action' may include promptly initiating an investigation to determine the factual basis for the complaint, 'speaking with the specific individuals identified by [the complainant], following up with [the complainant] regarding whether the harassment was continuing, and reporting the harassment to others in management.'"  *Waldo*, 726 F.3d at 814 (quoting *West v. Tyson Foods, Inc.*, 374 F. App'x 624, 633 (6th Cir. 2010)).

Here, no reasonable jury could conclude that Dean "failed to act" in response to the harassment by Sanchez.  Dean responded by putting Sanchez on administrative leave pending an investigation, only two days after Lett verbally raised her issues to Grant.[4]  There is no evidence that Lett's or Sanchez's supervisors knew, or should have known, about Sanchez's conduct before that time.

As part of its response, Dean spoke with Sanchez and then required him not to have contact with Lett as a condition for his continued employment.  That requirement was reasonably calculated to end the harassment Lett had complained about, as demonstrated by the fact that it stopped.  Lett does not provide evidence of any harassing conduct by Sanchez after that date.  Lett complains about a few sporadic statements and seemingly polite gestures that Sanchez made to her after Dean put its no-contact condition in place, but even when considering Sanchez's prior behavior, none of Sanchez's actions on or after August 17, 2017, could reasonably be construed as either harassment or circumstances that contributed to a hostile work environment.  In other words, even when considering the totality of the circumstances, Sanchez's subsequent actions were not objectively hostile or abusive.  Consequently, it makes no difference that Dean did not respond when Lett complained about them.  It had no legal obligation to do so.  Title VII did not require it to strictly enforce minor violations of its no-contact condition.  *Cf. Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 749-50 (6th Cir. 2008) ("Absent evidence of continued sexual harassment, we are unwilling to impose liability on Goodyear for failing to keep Parker and Mullins separated. . . .  Title VII did not require [the employer] to ensure that Mullins and Parker were separated at all times."); *Stewart*, 815 F. App'x at 21 (noting that "Title VII does not create

---

[4] It was not unreasonable for Grant to require Lett to put her allegations in writing so that it could make a record of them and then investigate them.  And in any event, to the extent Lett complains about the birthday card incident, which occurred the day after she verbally notified Grant of Sanchez's conduct but before Dean suspended Sanchez, that incident is not actionable because it does not rise to the level of harassment.

a 'general civility code'"; even "sporadic abusive language or offensive comments are not sufficient to support a claim") (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Similarly, no reasonable jury could find that Dean was indifferent to the situation involving Richardson.  Dean investigated and concluded that both Lett and Richardson were partly to blame for their altercation.  Lett herself acknowledges that she was arguing with Richardson before he lost his temper.  And she does not dispute that she was using her cell phone to handle personal affairs while on the school bus, which was not permitted.  (Grant Dep., PageID.591; Lett Dep., PageID.533.)  Dean reasonably required Richardson and Lett to attend counseling.  And there is no evidence of any further conduct by Richardson after that date that could be construed as harassment.

Accordingly, for all the foregoing reasons, Dean is entitled to summary judgment for Lett's claim that she faced a hostile work environment.

### 2. Retaliation

Lett contends that Dean retaliated against her for reporting harassment and filing complaints with the NLRB and EEOC.  Specifically, Lett complains about the following actions by Dean:  (1) ignoring her efforts to "address the retaliation she was feeling from her supervisors"; (2) offering to have Lett transfer to another facility; (3) requiring her to put her allegations of harassment in writing; (4) giving "little weight" to her concerns; (5) taking no action to keep Sanchez from contacting her; (6) requiring her to attend counseling; and (7) terminating her.  (Pl.'s Resp. Br. 17-18, ECF No. 52.)

### (a) Prima Facie Case

To establish a prima facie case of retaliation under Title VII, Lett must show the following:

(1) she engaged in a protected activity; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was

materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.

*Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018) (quotation marks omitted).

A materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 776 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "This showing is less burdensome than what a plaintiff must demonstrate for a Title VII discrimination claim." *Id.* at 775. That said, insignificant and "trivial" harms, including "normally petty slights, minor annoyances, and simple lack of good manners," do not suffice. *Burlington*, 548 U.S. at 68. The standard is an objective one, but "the significance of any given act of retaliation will depend upon the particular circumstances." *Id.* at 69.

Of the adverse actions described by Lett, only two could meet the requirement of being materially adverse: the requirement to attend counseling and the termination. The others would not dissuade a reasonable worker from making or supporting a claim of discrimination. Failing to address Lett's feelings of retaliation was not an adverse action. Nor was offering to let her transfer to another facility. The latter was simply an accommodation offered as a possible resolution of her complaints about Sanchez. There is no evidence that it was adverse. In addition, requiring Lett to put her harassment allegations in writing was trivial in its adverseness, and reasonable from Dean's perspective. Similarly, Lett's belief that Dean did not take sufficient action in response to her concerns about Sanchez's violations of the no-contact requirement is not evidence of an adverse action. As discussed above, Dean was not obligated to enforce this requirement, and Lett did not have the right to dictate Dean's response to her concerns.

Dean argues that the counseling requirement was not a materially adverse action, but the Court disagrees. In effect, the counseling requirement imposed an additional burden on Lett

16

beyond her regular work obligations. In addition, it suggested that Lett was not capable of performing her job, much like a negative performance review. A reasonable jury could find that imposing this obligation would dissuade a reasonable employee complaining about discrimination.

The cases cited by Dean are inapposite. In *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804 (6th Cir. 1999), the court of appeals concluded that requiring an employee to undergo a mental and physical examination to confirm his fitness for his job after he exhibited unusual behavior was not an adverse action for purposes of a discrimination claim under the ADA. *Id.* at 813. That situation is different from the one presented here, involving a different statute and a different standard (discrimination rather than retaliation). Dean also cites cases holding that putting an employee on paid leave and requiring a "fitness-for-duty" examination is not materially adverse for purposes of a Title VII retaliation claim. *See Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 787 (7th Cir. 2007); *Hunter v. District of Columbia*, 905 F. Supp. 2d 364, 378 (D.D.C. 2012). Unlike the employers in those cases, Dean did not put Lett on paid leave to allow her to attend counseling. In other words, it did not offer to compensate her for her time spent at the counseling sessions. Thus, its requirement was adverse in a way that undergoing a fitness exam while on paid leave is not.

Furthermore, there is no question that Lett's termination was materially adverse. Thus, the Court rejects Dean's argument that Lett cannot show the adverse action requirement for a retaliation claim.

Dean's motion does not challenge any other element of Lett's prima facie case for retaliation. Accordingly, the Court is not persuaded that Lett cannot establish her prima facie case.

### (b) Legitimate Reasons

Assuming Lett has established her prima facie case, the burden shifts to Dean to provide a legitimate, non-retaliatory reason for its adverse actions. It has met this burden. Dean concluded

that she was partially responsible for the altercation with Richardson, and the evidence supports this conclusion.  Lett concedes that she was arguing with Richardson before he lost his temper. (Lett Dep., PageID.530-531.)  She also acknowledges that she sometimes argued about religion with Richardson after he told her that he did not want to discuss it.  (*Id.*, PageID.528.)  In addition, Grant thought that counseling might help Lett address family circumstances that were potentially interfering with her work.  Lett herself acknowledges that "she was on her phone when she was supposed to be watching her assigned child[.]"  (Lett Dep., PageID.532.)

Lett has offered no evidence suggesting that Dean's reasons were a pretext for retaliation. Indeed, Dean required Richardson to do the same thing, and he complied.  Although Lett did not lose her temper like Richardson did, Dean could have reasonably determined that she was at least partially to blame for their conflict.  Furthermore, counseling was a reasonable requirement for an employee like Lett, who had a history of conflict with other employees.[5]  Lett's altercation with Richardson occurred after Lett stoked conflict with other employees.  She attempted to record conversations with them without their permission and, in the case of Cooley, spread negative information about them.  Lett's refusal to comply with the counseling requirement reinforces the reasonableness of Dean's decision.

As to the termination, there is no genuine dispute that Dean put her on unpaid leave and then terminated her after Lett refused to comply with a reasonable requirement to attend at least three sessions of counseling at Dean's expense.  Dean imposed that requirement after Lett refused to do her job simply because she did not want to be near another employee who, in Lett's mind, had not adequately supported Lett's harassment allegations against Sanchez.  Lett offers no

---

[5] Contrary to Lett's assertions, her conflicts did not stem from her earlier interactions with Sanchez or Dean's alleged failure to address those interactions.

evidence from which to infer that Dean's stated reason was a pretext for retaliation.  Accordingly, Dean is entitled to summary judgment for Lett's retaliation claim.

### B. Title VII – Discrimination

The outcome of Lett's discrimination claim follows from much of the reasoning given by the Court regarding her retaliation claim.  The facts and analysis are similar.  Lett herself contends that her "claim for sex discrimination is tied to [her] argument . . . regarding sexual harassment and hostile work environment."  (Pl.'s Resp. Br. 18.)

To establish a prima facie case of discrimination, Lett must show that she:

(1) is a member of a protected class; (2) was qualified for and satisfactorily performed her job; (3) suffered an adverse employment action; and (4) was treated less favorably than a similarly situated person outside the protected class.

*Burnette v. Wilkie*, No. 19-4015, 2020 WL 6121448, at *2 (6th Cir. Aug. 4, 2020).  If she makes this showing, then Dean must articulate a legitimate, non-discriminatory reason for its actions.  If it does so, then the burden shifts back to Lett to show that Dean's stated reason is pretextual.  *Id.*

As discussed above, assuming Lett has established a prima facie case, Dean has provided legitimate reasons for its decisions to require counseling and to suspend and then terminate her.  Lett offers no evidence from which to infer that these reasons were a pretext for sex discrimination.  She does not point to any similarly situated employee who was treated differently.  She does not contend that the reasons for Deans' actions had no basis in fact.  And there is no evidence from which a jury could reasonably infer that Dean's reasons did not justify its actions or that those reasons were not its actual motivation.

Lett apparently argues that the burden-shifting framework of *McDonnell Douglas* does not apply because she has provided direct evidence of discrimination.  According to Lett, Sanchez's actions were "explicitly sexual and patently degrading to women."  (*Id.*)  Be that as it may, Lett must show that Dean is liable for Sanchez's conduct.  Sanchez was not Lett's employer, and he

did not make any decisions regarding Lett's employment that could constitute discrimination.  His conduct is relevant for Lett's claim that she faced a hostile work environment.  It is not relevant as evidence of discriminatory animus by Dean when it made decisions about her employment. Accordingly, Lett has failed to show that Dean discriminated against her in violation of Title VII.

### C. ADA

Lett claims that Dean violated the ADA by requiring her to attend counseling without a legitimate business necessity.   Under the ADA, an employer may not "require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."  42 U.S.C. § 12112(d)(4)(A).  A medical examination is "a procedure or test that seeks information about an individual's physical or mental impairments or health."  Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the ADA, No. 915.002 (July 27, 2000).

There is no genuine dispute that Dean did not require Lett to undergo a medical examination.  Counseling is not the same as a medical examination.  Moreover, Dean made clear that Lett did not have to reveal any information related to her counseling, other than the fact that she attended.  Thus, Lett's ADA claim is meritless and will be dismissed.

### IV. Supplemental Jurisdiction

Because Dean's motion resolves all of Lett's federal claims, the Court will decline to exercise jurisdiction over her remaining claim, which arises under Michigan's Elliot-Larsen Civil Rights Act (ELCRA).  *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims."); 28 U.S.C. § 1367(c)(3). In deciding whether to exercise jurisdiction, the

Court should weigh "judicial economy, convenience, fairness, and comity."  *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996).

Although it appears that the parties have completed discovery, that discovery would still be useful in state court.  In addition, the statute of limitations for Lett's claim under ELCRA stopped during the pendency of this litigation.  *Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2014).  Consequently, she should have no trouble refiling her claim in state court, should she choose to do so.

## V. Conclusion

For all the foregoing reasons, the Court will grant Dean's motion for summary judgment on Lett's claims under federal law and dismiss the remaining claims because the Court declines to exercise supplemental jurisdiction.

An order and judgment will enter consistent with this Opinion.

Dated: January 15, 2021                         /s/ Hala Y. Jarbou
                                                HALA Y. JARBOU
                                                UNITED STATES DISTRICT JUDGE